OPINION OF THE COURT
Philip S. Straniere, J.
Petitioner, 2505 Victory Boulevard, LLC, commenced this commercial nonpayment proceeding against the respondents, Victory Holding, LLC (VHLLC) and “John Doe XYZ Corp.” as an undertenant, alleging that the respondent VHLLC failed to pay certain items of additional rent due and owing under the terms of the lease. Both respondents defaulted in appearing and answering and a judgment of possession only was entered against respondents on July 31, 2007. A warrant of eviction was issued by the court on August 1, 2007 and a marshal’s notice was served on August 3, 2007.
Currently before the court is respondent VHLLC’s order to show cause to vacate its default. There is no application to vacate the default on behalf of the undertenant. Respondent VHLLC alleges as its excuse for its default that its sole member was out of the country between June 20, 2007 and August 3, 2007. Respondent VHLLC alleges that it has a meritorious defense in that all the base rent was paid to date and that the items of additional rent are not respondent VHLLC’s responsibility.
There was a written lease dated October 20, 2003, between petitioner as landlord and respondent as tenant, for the entire premises known as 2509 Victory Boulevard, Staten Island, New York, for “gas station, repair shop and convenience store uses and no other purpose, unless approved in writing by Lessor.” The written lease indicates that there was an existing tenant, Quick Lube & More, Inc., which was conducting an automobile repair business when the agreement was made and that lease would continue in effect. The lease which is involved in this litigation is subject to that month-to-month tenancy. Since it is not named as respondent, the court is concluding that either *281 Quick Lube & More, Inc. is no longer a tenant and. that the new tenant was served as “John Doe XYZ Corp.” as indicated above and is in default, or that there was no intention on the part of the petitioner to terminate the underlying Quick Lube & More, Inc. tenancy.
Respondent VHLLC also claims that the service of the notice of petition and petition was defective in that they were never received, a statement contradicted later in its principal’s affidavit where receipt of a copy by mail is acknowledged. Respondent VHLLC also alleges that the service is defective in that the person to whom both the predicate notice and notice of petition was given, “Effy Gordon,” was not an “employee” or in any other way connected to the respondent VHLLC. It should be noted that in its principal’s affidavit he only refers to Effy Gordon and the service of the predicate notice and not the pleadings. The court is treating this as an “oversight” in drafting and not an admission that Gordon became an employee or agent of respondent VHLLC between June 19, 2007 and July 13, 2007, the dates of service.
Issues Presented
A. Does the RPAPL Permit Service on a Limited Liability Company?
Respondent Victory Holdings, LLC is a “Limited Liability Company.” A “Limited Liability Company” is defined as “an unincorporated organization of one or more persons having limited liability for the contractual obligations and other liabilities of the business . . . , other than a partnership or trust, formed and existing under this chapter and the laws of this state” (Limited Liability Company Law § 102 [m]).
Service of process on a “Limited Liability Company” (LLC) is governed by article III of the Limited Liability Company Law. Process is defined in the statute as:
“judicial process and all orders, demands, notices or other papers required or permitted by law to be personally served on a limited liability company or foreign limited liability company, for the purpose of acquiring jurisdiction of such limited liability company in any action or proceeding, civil or criminal, whether judicial, administrative, arbitrative or otherwise, in this state or in the federal courts sitting in or for this state” (Limited Liability Company Law § 102 [x]).
The statute provides detailed methods for service of an LLC either through the Secretary of State or upon an agent *282 designated for receipt of service of process. Neither of these methods was used by petitioner in this case to serve the predicate notice and notice of petition and petition. This, however, does not mean that service was not proper.
Limited Liability Company Law § 301-A (e) (5) provides, “Nothing in this section shall affect the right to serve process in any other manner permitted by law,” while Limited Liability Company Law § 303 (b) states, “Nothing in this section shall limit or affect the right to serve any process required or permitted by law to be served upon a limited liability company in any other manner now or hereafter permitted by law or applicable rules of procedure.”
A review of the affidavits of service of the predicate notices and the pleadings disclose that service was made in conformity with RPAPL 735 (1) (b). The pleadings were served on a “person of suitable age and discretion who ... is employed at the property sought to be recovered” followed by mailing a copy of the pleadings in conformity with the statute, i.e., to the premises and to another business address in the state. Petitioner completed service by both required mailings. There is no language in the RPAPL specific to service of process when the tenant is an LLC.
The person who can be served under RPAPL 735 is a person employed at the property sought to be recovered, while the person who can be served under CPLR 311-a (a) (iv) is “any other person designated by the limited liability company to receive process, in the manner provided by law for service of a summons as if such person was a defendant.”
In order to challenge the service as effectuated by the petitioner on an “employee” at the property, respondent VHLLC alleges that it has no “employees” at the premises. Although not alleged, is VHLLC contending that Gordon was an employee of the undertenant or he just happened to serendipitously be at the premises to accept process in June and July 2007 when the process server appeared? Respondent VHLLC has not submitted any documentation that another entity other than it was in possession and operating a business at the premises. The lease between petitioner and respondent VHLLC has a clause that prohibits an assignment or subletting of the lease without the petitioner’s consent. There is no evidence from respondent VHLLC that the landlord consented to a sublet, so how did this mysterious third party enter into the picture? How did respondent VHLLC operate a 24-hour service station without employ *283 ees, especially if its only member was out of the country as he claims he was? This is not credible. The affidavits of service of the predicate notice and the pleadings reflect mailings to both the address of the premises and the address that the respondent VHLLC alleges is its principal office. The affidavits of service are facially in compliance with RPAPL 735.
In fact, in spite of denying receipt of any notice of the summary proceeding in his affidavit in support of respondent VHLLC’s order to show cause, its principal states: “28. The only copy of the notice of petition and petition that was received by Victory Holding LLC was received by mail.” He does not state at which address it was received. He does however acknowledge receipt which contradicts his statement that he only learned of the eviction when the marshal’s notice was received after August 3, 2007.
It is hornbook law that service of process need only be made in a manner reasonably calculated to give notice to the respondent of the petitioner’s claim. The law does not require that actual notice be received so long as the petitioner followed the statute. The statute is designed to ensure that a legally reasonable method was used by the petitioner. It can only be concluded that it was. Respondent, by admitting receipt in the mail, acknowledges that the protection afforded by the statute was achieved. Respondent received a copy. Interestingly, respondent does not state when he received that notice.
It should be pointed out that in 1999 the legislature amended the CPLR to provide for methods of effectuating personal service on an LLC (CPLR 311-a). No equivalent amendment was made to the RPAPL. Petitioner effectuated service under RPAPL 735 (1) (b) in the same manner as service would be made upon a “corporation, joint-stock or other unincorporated association.”
The question remains whether an LLC may be served under the RPAPL or is the petitioner required to effectuate service pursuant to the Limited Liability Company Law or CPLR 311-a? Although Limited Liability Company Law § 301-A (e) (5) and § 303 (b) both recognize that service may be made in any other manner permitted by law, RPAPL 735 only provides for service on a “natural person” or a “corporation, joint-stock or other unincorporated association.” As set forth in Limited Liability Company Law § 102 (m) an LLC is an “unincorporated organization” and not an “unincorporated association.” CPLR 1025 requires that service upon an unincorporated association be *284 made in accordance with the General Associations Law. Likewise, CPLR 311-a governs personal service on an LLC.
Is it possible that the legislature intended that LLCs be given special treatment in summary proceedings requiring that service be made under the CPLR rather than the RPAPL like every other statutorily created entity? With the New York State legislature anything is possible; however, a more likely explanation is that the legislature just failed to check all of the statutes which would be implicated by the creation of a new legal entity such as an LLC.
The legislature gave LLCs the power to “purchase, take, receive, lease or otherwise acquire, own, hold, improve, use or otherwise deal in or with real or personal property or an interest in real or personal property, wherever situated” (Limited Liability Company Law § 202 [b] [emphasis added]), as well as to “sue or be sued, or institute, participate in or defend any action or proceeding” (Limited Liability Company Law § 202 [a]). When these clauses are read in concert with Limited Liability Company Law § 301-A (e) (5) and § 303 (b), the only conclusion to be drawn is that LLCs are subject to service under the RPAPL.
Although this appears to be a case of first impression in regard to summary proceedings, it has already been addressed by one court in a similar situation. In Richard G. Roseetti, LLC u Werther (6 Mise 3d 1040[A], 2005 NY Slip Op 50377[U] [2005]), the court dealt with the issue of whether or not an LLC should be considered a corporation, partnership, or association within the meaning of Uniform City Court Act § 1801-A and permitted to commence a commercial claim in the small claims part of the court even though LLCs are not mentioned in the statute. The court concluded that
“it is this court’s position that since an LLC has the attributes of a voluntary association with corporate limited liability protection, this court will treat an LLC as an entity which is a cross between an association and a corporation. Since both an association and a corporation are permitted to file a commercial claim, then an LLC may file a commercial claim as well.” (2005 NY Slip Op 50377[U], *2.)
In reaching its decision, the City Court of Albany relied on a ruling by the Nassau County District Court which dealt with the issue of whether or not an LLC was required to be represented by counsel in a civil action in the same manner as a *285 corporation and association even though not so mentioned in CPLR 321 (a). The court held that an LLC is subject to CPLR 321 (a) and must appear by an attorney in an action because they “have the attributes of a voluntary association with corporate limited liability protection and therefore should be treated as such for purposes of CPLR 321 (a)” (Monte Carlo v Yorro, 195 Misc 2d 762, 765 [2003]; Tierra W. Apts., LLC v Bobadilla, NYLJ, Apr. 21, 1999, at 27, col 2).
An analogous situation arose in the case of Stahl 3 Dag, LLC v Permanent Mission of Chile to United Nations (9 Misc 3d 946 [2005]) where the court was forced to deal with the issue of whether or not a Mission to the United Nations was subject to service in a summary proceeding under the RPAPL. In that case both sides conceded that as written neither the RPAPL nor the CPLR set forth the method of service on a foreign mission. It was initially alleged by the respondent that service had to be made pursuant to the Foreign Sovereign Immunities Act of 1976 (FSIA). That argument was negated by the fact that the tenant waived the right to be served under the FSIA. This left the court to determine how service was to be obtained on a foreign mission. Respondent argued that since it is neither a natural person nor a “corporation, joint-stock or other unincorporated association” it was not subject to service under either the RPAPL or the CPLR. The court, in reaching the conclusion that service was proper, held:
“Addressing this issue of first impression, this court holds that petitioner may serve respondent pursuant to RPAPL 735 even though section 735 only refers to mailing either to a natural person or a corporation, joint stock or other unincorporated association. Section 735 is the only section of the Real Property Actions and Proceedings Law which addresses the issue of the proper method of service in a summary proceeding. In reviewing the statutory language of RPAPL 735, it appears that the Legislature’s intent in enacting section 735 was to provide a method of serving a respondent in a summary proceeding by leaving the papers with a suitable person at the property sought to be recovered and by mailing the papers to the respondent at the property sought to be recovered, which is exactly what petitioner has done in the instant matter. Moreover, it would be a ludicrous result to find that respondent expressly waived the service provisions of the *286 FSIA but that the petitioner is still required to serve respondent pursuant to the FSIA because there is no other proper method of service.” (9 Misc 3d at 949.)
It might be argued that Stahl 3 is not analogous because in that case both the RPAPL and the CPLR were silent on the issue of service, but in the case of an LLC, there are service provisions in the CPLR and the Limited Liability Company Law. This argument must fail. First, as set forth above, the Limited Liability Company Law includes those two sections preserving methods of service existing under other statutes (Limited Liability Company Law § 301-A [e] [5]; § 303 [b]). Second, by the terms of the lease the tenant agreed that in the event of a default the landlord “may enter upon and repossess the Demised Premises or any part thereof by force, summary proceedings, ejectment or otherwise, and may remove Lessee and all other persons and any and all property therefrom” (lease ¶ 21 [emphasis added]). Since respondent VHLLC consented to be removed from the premises by summary proceeding, it cannot object to being served in a manner prescribed by RPAPL 735.
To rule otherwise would create the absurd situation where every legal entity which was in existence when RPAPL 735 was enacted (last amended in 1980) would be susceptible to service under that statute, while LLCs (permitted as of October 1994) and other entities created by the legislature after that date are to be served in a completely different manner.
The Nassau County District Court dealt with a similar issue in 126 Spruce St., LLC v Club Cent., LLC (15 Mise 3d 538 [2007]), a summary proceeding where service was made upon the alleged “managing agent” of respondent LLC by effectuating “personal service” pursuant to CPLR 311-a. In that case respondent argued that the person served was not a “managing agent” and that service was not made at the premises sought to be recovered. The court in upholding the service did not conclude that service had to be made pursuant to CPLR 311-a and not the RPAPL. Instead it used CPLR 311-a to define how to obtain personal service over the LLC so as to be personal delivery to the respondent as permitted by RPAPL 735 (1). The court did not address the issue of whether or not this was the only method by which service could be obtained over an LLC.
Taking all of these cases into account, it must be concluded that CPLR 311-a and Limited Liability Company Law §§ 301 *287 and 303 establish statutory methods of obtaining “personal service” on an LLC so as to be considered personal delivery to the LLC. Other methods of obtaining “personal service” through either substituted or conspicuous service can still be obtained under the RPAPL by complying with RPAPL 735. This must be the conclusion to be reached since Limited Liability Company Law § 301-A (e) (5) and § 303 (b) recognize that LLCs are to be subjected to other methods of service “now or hereafter permitted by law or applicable rules of procedure” (Limited Liability Company Law § 303 [b]). Further to hold that service would have to be made by serving the Secretary of State or some other agent designated by the statute would put the respondent tenant at an extreme disadvantage since the time required for notice to be forwarded to the LLC would defeat one of the purposes of a summary proceeding pursuant to RPAPL article 7, that is, expeditious resolution of the landlord-tenant dispute.
B. May a Single Employee be Served for More than One Respondent?
A review of the affidavits of service of both the three-day notice and the notice of petition and petition reveals that service was effectuated on both Victory Holding, LLC and “John Doe XYZ Corp.” by delivery to “Effy Gordon personally” who “stated he was authorized to accept legal papers.” Respondent claims that Effy Gordon was not an employee of VHLLC and was not authorized to accept the service of papers on its behalf.
Several courts have dealt with the issue of whether service of process may be effectuated under RPAPL 735 by delivery to one cotenant at the premises to be recovered by service of notices and pleadings on an employee of another cotenant. It has been held that if the person is not an employee of the person or entity sought to be served, that employee would not meet the definition of a person of suitable age and discretion. “As a general rule, in a business setting, it would be unfair and improper to say that an employee of another tenant, not employed by the tenant on whom service is intended, would be one of suitable age and discretion. Their relationship to each other is simply too remote” (Ilfin Co. v Benec Indus., 114 Misc 2d 411, 413 [1982]).
In another case which involved service on an employee not employed by the respondent, the court determined that it was of no concern because the relationship of the parties as sublessor and sublessee provided a sufficient basis to conclude that service on such an employee was a method best calculated to *288 apprise the respondent of a pending lawsuit since it was more likely than not that the employee would deliver the process to the named party (Cooke Props., Inc. v Masstor Sys. Corp., NYLJ, Jan. 4, 1993, at 22, col 2; see also Inter Credit Corp. v 888 Enters., Inc., 7 Misc 3d 1023[A], 2005 NY Slip Op 50708[U] [2005]; 50 Ct. St. Assoc. v Mendelson & Mendelson, 151 Misc 2d 87 [1991]; Silverman v BPPT Enters. Corp., 144 Misc 2d 270 [1989]). However, each of these cases required a traverse hearing to determine the relationship between the entities named and the employee served.
A question of fact exists as to what exactly was the relationship of Effy Gordon to the respondents and what, if anything, he did with the notices he received from the process server.
Conclusion
First, service was made in conformity with the statute and received by the respondent. Respondent acknowledges receipt in the mail, one of the methods authorized to ensure that notice was given when a method other than personal delivery is employed. The fact that respondent’s principal was out of the country and did not receive the notice until its principal returned was not the petitioner’s fault. Respondent assumed the risk that such an event could occur and should have made provision for such a contingency knowing the principal would be gone for an extended period of time. Second, respondent has not submitted any documentation that its principal was out of the country when service was made. Conveniently, the principal allegedly returned to New York on the same date the marshal’s notice was served. Third, respondent has submitted no proof to establish that the person making the affidavit in support of the order to show cause is the sole member of the LLC as alleged. Respondent has submitted a bald, unsupported self-serving allegation in that regard which is insufficient to vacate the default. Fourth, respondent’s allegation that the three-day notice was not served in accordance with the notice provision of the lease is not correct. The notice was served by regular and certified mail. Paragraph 41 of the lease required service by first-class registered or certified mail return receipt requested. Although the commas are missing, these are really three different methods of service. It should read first-class, registered or certified mail, return receipt requested. Service was by first-class and certified mail. This conforms to the terms of the lease.
Respondent VHLLC’s order to show cause is granted to the extent that a hearing will be held solely on the issues of by *289 whom “Effy Gordon” was employed and what he did with the predicate notices and pleadings he received. The process server will be required to testify as to the events of the service. Respondent will appear with documentation to establish who is an employee, member or managing agent of VHLLC.